We'll move to our second case this morning, Alonso v. Weiss. Good morning, Your Honors. Thank you. This is an appeal from a grant of summary judgment dismissing all the claims against a federal equity receiver appointed in an SEC enforcement action entitled SEC against Nutmeg. My clients, the plaintiffs, are investors in the limited partnerships that were taken over. Mr. Berry, before we get into the question here with respect to jurisdiction, and this court had issued an order requesting input from both sides about this court's jurisdiction that you did not respond to. Let me finish, please. The defendants have taken the position that the defendants who were not subject to the judgment order were nominal defendants against whom you did not assert claims. Do you agree with that? That is correct. So what's, in your view, what's the way to correct the fact that the underlying judgment order does not address those nominal defendants? We actually filed a jurisdictional statement at the outset of the appeal where we said that exact, we made that exact point. Then when Ms. Weiss made her motion suggesting that we hadn't sufficiently stated what our position was, we reiterated the position we filed a year ago. Their position is identical to ours. I understand that perhaps in retrospect we should have restated our position in our opening brief. And what do you think the way, Mr. Berry, to cure that is? Because the underlying judgment doesn't reflect anything with respect to the nominal defendants, so there are defendants who are named in the complaint who are not subject to the judgment order. We agree with Ms. Weiss that there is really nothing to cure. This is only a technical aberration. The law that we cited and Ms. Weiss has cited repeatedly and without qualification says that if somebody's being sued only as a nominal defendant, as some of the cases we cited had to do with parties that were named only because they were the partnership of the corporation of which the investor was bringing derivative claims, they're not, for purposes of appellate jurisdiction, they're not considered real parties. They're there only in order to permit the district court to effectuate any kind of relief. For example, if there's an order that there's a recovery from a defendant, it in certain circumstances would go to the partnership and the partnership would distribute it. Here, since everything has been dismissed, there's no risk of this court imposing liability. What would happen is if there was a reversal, the case would go back to the district court, the district court would have all those parties in front of it. If there is a recovery, subsequently, for example, Mercury Fund would be present, would be subject to the district court's jurisdiction. If Ms. Weiss is ordered to pay a certain amount of money to Mercury Fund, the district court could say, would then have the jurisdiction to allocate proceeds. First you pay trade creditors, first then you pay investors, then you pay attorneys, whatever. So you think it's okay for the court to go ahead and proceed with this or does the district court need to enter some type of amended judgment dismissing the nominal defendant? Our statement made at the outset of this appeal and then reiterated in response to their motion for clarification and the SEC statements, we have now made the same statement two times. The SEC has made it three times. We've cross-referenced their view twice. They've cross-referenced our view twice. Nobody has suggested that any of the case law, not the SEC, I'm talking about Ms. Weiss, any of the case law that we've cited or any of the case law that Ms. Weiss has cited addressing this issue the way I've tried to describe it here is incorrect. I believe they're nominal parties. I believe that since there's no risk that this court's going to order any affirmative relief, that there's no need to have them on an appeal. I think that's the motive behind the case law that both sides have been citing from the outset. I don't think it's a real issue. At least it's the only thing we've ever agreed upon. So whether it's a real issue or not, at least both sides have been repeatedly agreeing with each other on this point. So there's a lot has been written about the standard of care that our position is the appropriate standard of care is a gross negligent standard. Do you agree in order to adopt that standard that we would have to change our case law? No, absolutely not. You think the Seventh Circuit case law provides for that? We're not disputing the Chicago Pacific willful and deliberate standard. We disagree on how it should be interpreted, but this is not every receivership. This is a receivership which not only was Ms. Weiss made Nutmeg's receiver, but she also was made the general partner of each of the investor pools, which are all limited partnerships. That's not every case. In many cases there's a receiver who's only appointed to be a receiver and does not have this second half of being a general partner. The other point to be that in your view she became a general partner here and because of that the standard should be different than the willful and deliberate that we've applied in other trustee or receivership situations. I believe that in this case where she is also a general partner that she is held to the standard, should be held to the standard of general partnership. This is a situation where she is now officially the general partner of several Illinois limited partnerships and several Minnesota limited partnerships. We made arguments to the district court that this appointment order had deprived us of a general partner and the district court's response was no. It made Weiss the general partner inside of the order. Under Illinois partnership law, a limited partner has the right to sue a general partner for gross negligence. By operation of this appointment order, did the order, and I'm looking at paragraph B1 and the order appointing Ms. Weiss as receiver in the underlying SEC case, did the order make Ms. Weiss a general partner or just have her oversee all aspects of the business including those of the general partner? It made her a general partner. We actually had a... How do you read that the receiver shall oversee all aspects of Nutmeg's operations and business which include but are not It doesn't say the receiver shall serve as a general partner. That was the argument we made. We had a claim that the appointment order deprived us of a general partner. We made that argument back in 2000 when the motion to dismiss was briefed and the district court specifically agreed with us and disagreed with us and said that the reason we weren't deprived of a general partner was because the receivership order, the appointment order, made us a general partner. If you look at RSA 7-8, the district court is specifically saying that in response to our argument that the receivership order triggered a right to elect a new general partner that no, there's no violation of our right to have a general partner specifically because the appointment order made Weiss a general partner. And Do you now agree with that interpretation? Well, that's the law of the case. There's not much we can do about it. You're on appeal, so do you agree with that interpretation? We went down the path the district court suggested. If we did not, yes, in retrospect, if the outcome is that she's our general partner, that's fine so long as we still have the limited partner's statutory right to sue a general partner. If by operation of this appointment order, a limited partner's right to sue the general partner for gross negligence evaporates, that's obviously a process violation. Where was our notice of this? Where was our opportunity to be heard in opposition to the taking away of our under Illinois statute, under Minnesota statute, to sue a general partner for gross negligence? You can't deprive somebody of a statutory right of action without giving that person a right to be heard in opposition to taking away of that right. So that's one part that we believe that, as Judge Lefkoe said, the court-mandated end of the appointment order is that wife assume and retain the general partner. These are Minnesota and Illinois partnerships. Section 959B of Article 28 specifically incorporates by reference applicable state law for receiverships and bankruptcy trustees. I think that this is a very, I have not seen any real arguments in opposition to this. Our second point is that the is a three-way agreement. The case on this in the Northern District has repeatedly recognized that agreed orders are contracts and that contracts and agreed orders should be interpreted as contracts. Unfortunately, I overlooked this decision. It's called Service v. Phoenix. It's a Judge Dow decision in the most of the decisions, which specifically hold that an agreed order, such as this receivership order, is a contract and should be interpreted as a contract. So it's a contract that not only did it specify what the standard of care was, i.e. gross negligence, it's something that Weiss agreed to knowing what the standard of care was. It's something the SEC proposed specifically because it Mr. Berry, go down. Let me ask you a question on that front. Let's suppose you're right about that, okay? How do you think through the cause of action you brought then? Are you bringing a cause of action under Illinois or Minnesota law? Or are you bringing a cause of action more for breach of a contract or breach of a standard in an agreement that confers a benefit upon your client, such it's kind of like a federal common law claim? Both. We have alleged that the standard of care, our causes of action, recite as the appropriate standard of care both the gross negligence standard, as the parties effectively contracted to, and that mandated under Illinois and Minnesota law. We've alleged that in the alternative, if you will. But the outcome is the same. It still gets you to gross negligence. The Second Circuit has dealt with this precise issue in a case called, in a large receivership matter involving the largest hedge fund Ponzi scheme prior to the Madoff scheme. It's called In Re Buy You, and in that case the entities were limited liability companies, and the receivership order made the receiver not only receiver of the property involved, but also the managing member of the limited liability companies. Then the managing member put the companies into bankruptcy, and the U.S. trustee argued because the receiver is a custodian, this terminates her authority over the company post bankruptcy filing. The Second Circuit rejected this, said that the receivership hat does not trump the limited liability managing member hat, that the authority that the receiver had as the managing member survived the bankruptcy, and that the obligations or the liabilities that this individual had under the limited notwithstanding the other hat of being a receiver. Our argument is essentially the same. Our point is that Weiss's obligations as a general partner are not trumped by her limitations on those obligations that might be inferred from her dual status as both the receiver for the company's assets and the general partner of the companies. So let's suppose for discussion purposes that you're right about that, and let's say gross negligence is the standard. What's the content of gross negligence, number one? And then number two, what's your single best example of where you think gross negligence may have been committed here? And the reason I just want you to focus on one or two examples is there's a dozen or so of them, or 15 of them in the briefs. Okay, well I've read a lot of this court's decisions about what gross negligence means. I know that it's a standard that's lower than recklessness, and so willful blindness is at least gross negligence. Willful blindness may well be recklessness. One example is that Ms. Golding took a $10,000 convertible note. She, at Mr. Golding's urging, one time she acted at Mr. Golding's suggestions, she took a $10,000 portion of that note, issued a conversion notice based on a $10,000 portion of the note, received the stock, and sold that $10,000 portion of the debt for $119,000 of stock, basically multiplying her recovery, having a recovery, you know, that was a multiple of 12. That same instrument, she could have done that the next day, where the market was even better and made more money. She could have continued to do it. She could have done it repeatedly. Which conversion is this? Which securities are we talking about? Pardon me? Which securities are we talking about? We're talking about NOIP. Okay. How can you say that's gross negligence or willful blindness when the undisputed evidence shows that before she took that action, she looked at the options, she sought the advice of the investment advisor, who the court had appointed, and followed the advice of the investment advisor? Well, we How can that possibly be willful blindness? If you've seen our reply brief, this is addressing... How can that possibly be willful blindness when the undisputed evidence shows that in making a determination, she conferred with the court-appointed investment advisor and acted on his advice? Because the court-appointed investment advisor was not being compensated for security sales. The court-appointed investment advisor, MMP, had an agreement where if MMP brokered the sale of a convertible note or the sale of a judgment... But there's nothing in the court documents or the appointment order saying that she could not consult with that investment advisor on investments for the estate. But you can't not invoke the advice of that investment advisor if it's tainted by an economic bias toward selling the note as opposed to converting the note and selling the stock. So this independent court-appointed investment advisor, it's your view that investment advisor was tainted and this wife should have known not to rely on his advice? This is a substantial portion of our reply brief beginning on pages 25 and 26. I've read the briefs. I'm focusing on what your argument here is. And the decision we rely on is called In Re Nuvine. It's a Northern District Bankruptcy Court matter. It specifically holds that you cannot invoke the advice of an investment advisor that is not neutral. If the investment advisor is being compensated for another type of transaction, that bias prevents the fiduciary from relying on that investment advisor. Here it's clear that without any question that MMP, which we dispute was an investment advisor, we dispute that it was court-appointed, but we're focusing on what its contract with Ms. Weiss was. Its contract said under it was supposed to consult with concerning the disposition of liquidated assets. It would be compensated, I'm sorry, illiquid assets. It would be compensated for the sale of illiquid assets. It says nothing about it being sold, being compensated for sales of securities out of a brokerage account. Ms. Weiss said in her deposition, which we cite, that MMP was not retained to give advice in connection with the securities that were in the brokerage accounts. In her papers below, in her reply papers below, Ms. Weiss says, well it is possible, effectively, that if MMP had been a broker, it might have been compensated for security sales, except that the MMP was not qualified as a broker for the companies. There was no possibility that MMP would ever receive any kind of compensation. Didn't MMP's service proposal, which is in the record here, include a fee of 5% of all liquidated assets? Not just limited to what you're arguing? If you look at the agreement, the agreement applies the 5% fee to all liquidated assets. No, it's under the category of illiquid assets. It's not under the category of stock. If Ms. Weiss designates support in liquidating debt and equity positions, which is the language that Weiss is now relying on, as an advisory service. Mr. Rowe, I know your time is up. Let me just ask you one quick question. Is the kind of nub of your point here that, whether you want to call it willful blindness or gross negligence, that she knowingly relied upon incompetent advice on this transaction? Two quick answers. It was conflicted advice for the reason set forth in page 27 of our reply brief. Secondly, she has the ability to look at the stock prices and do what is third grade, second grade level math and realize that whatever these people might be saying to her, which is not supported by any contemporaneous documentary evidence, but she's permitted to look at the stock prices and say, you know, I'm going to reject this advice. But the point is, it's never, it's a fiction. The MMP never gave this advice. Where is anything other than Weiss's 2015-2016 declarations making this without any documentary or evidentiary support? Obviously, you're saying she didn't, it's not that it's not conflicted advice, but that she didn't get the advice in the first place. I believe she never got that advice in the first place. I don't believe, there's certainly nowhere in the record is MMP saying, you know what, don't sell that stock today or don't convert and sell that stock today. It's a pretty serious allegation, right, to, I mean, that she, a court-appointed receiver fabricated the basis upon which she acted? She also, I mean, even if you disagree with the judgment, I mean, it's a different degree to say she fabricated the reason. She also sent out tax returns that said that Mr. Golding had been taken into custody when she obviously knew that wasn't true. Our position is, she was very anxious to do the bidding of the SEC. She admits she wanted more SEC receiverships, and the way she was going about getting on the SEC's list of preferred receivers was to assist the SEC throughout the SEC and Golding. Thank you. Mr. Novak. Good morning, Your Honors. May it please the Court. I'd like first, very quickly, to address Judge St. Eve's question about jurisdiction. There really is no need to amend the order. All of these defendants, who we've called nominal defendants, there's no dispute that they are, were also plaintiffs because this action was brought derivatively on their behalf. So the judgment that says the judgment centered against all plaintiffs, well, that would, of course, include those nominal defendants. But maybe more importantly, in the opinion that preceded by minutes the judgment order, Judge Lefkow said, quote, this case is dismissed in its entirety. So there's no question about the intent of, what the intent of the judge was. The judgment had the language that it has. I don't think it needs to be amended. The 11th Circuit case that we cited didn't require an amendment for nominal defendants. You did ask point-blank, well, what could be done if there needed to be a cure? I guess very easily Judge Lefkow could amend that judgment, strike that, and just say judgment is against all plaintiffs in favor of all defendants. I just have concern that that might be viewed then as a do-over, that we have to start filing a new, they'd have to file a new appeal, and it would be, seems to me, it would be a fuel. That was not the intent of my question. I hope not. So if you, if you don't have any other questions on jurisdiction, I'm going to move to some of the things we heard in the, in the opening argument. We've heard the admission again. It was done in writing. It's done here today. The willful and deliberate violation of fiduciary duty standard is the standard that governs this circuit. It cannot be changed by a district court, even the district court in which the case arises, and the argument that, well, she's not really a receiver because she's a partner. The, the appointing order said that she was going to be the receiver to take over the business. Well, that had to include the partnerships that were part of the receivership estate, and as night follows day, she takes that position of general partner. If this were an LLC, she'd take the position of a managing member. If it was a corporation, she'd take the position, if you will, of the board of directors. That doesn't mean that the liability standards governing LLCs, or governing corporations, or governing partnerships... And Mr. Novak, is it your position that she has become the general partner, or that she is taking on and overseeing the duties of a general partner? Our position would be the latter. That she is overseeing and taking... Right. On the role of the general partner, not actually becoming a general partner. That's right. In, in order to discharge her duty as receiver, she has to run the sort of take over those duties. And indeed, the opening sentences of the appointment order indicate that the receiver shall be the agent of this court, and solely the agent of this court, in acting under this order, and only then go into the duties that she may exercise, or powers she may exercise, pursuant to her authority as an agent of the court, as a federal receiver. So, the federal standard of care for personal liability applies, and that's willful and deliberate. That is correct, and that's just another indicia of the intent of the court in appointing her. Because she has the power to act as general partner and investment advisor doesn't mean that a different standard of care applies under state law. I couldn't agree more with that suggestion. And that's how Judge Lefkoe viewed the matter. She did. And it seems to me there's case law support in other circuits where there's sort of this dual role being exercised, that it's the receivership role that is the operative one, and so the federal standard of care must apply. There's Ninth Circuit cases. We don't have any case law on this, so we have to look elsewhere, but that seems to be how the other circuits deal with it. That's correct, although the Ninth Circuit never did say, other than in some dicta that was unexplained, that maybe it would be different if there was an appointment as general partner. The Bayou case that you just heard about doesn't discuss the standard of care or liability. All that said was, when the matter went into bankruptcy, there was no need to appoint a bankruptcy trustee and add another layer of expense when you already have a receiver operating the business. And just looking at 959B, which is the touchstone for why the argument is made that Illinois and Minnesota law applies, if they are right that that statute does something more than what it says, which is to third parties, outsiders, you have to obey state law, and liability might accrue under state law to the third parties. If it's intended to say it governs the inter se workings of the receivership estate, then your federal standard is meaningless because every receivership deals with property in one state or another. So in every situation, if they're right, state law would trump the federal standard. That can't be. Almost every circuit has weighed in on the standard. They don't agree, but in every case there's a federal standard. Perhaps, as Judge Scudder recognized, it's a federal common law standard applicable to court appointed receivers. And that's what distinguishes those agreed order cases that we also heard about. Those agreed order cases are all in the private party context, where the only people affected by the agreed order is going to be the plaintiff, the defendant, and the court. In our case, the appointing order affects, it does affect the SEC? Yeah. It does affect the plaintiff? Yeah. It does affect, I'm sorry, plaintiffs weren't a party. SEC, the receiver, and the court. But the consequence of that appointing order affects an entire estate, and the standard of liability that this court has set for this circuit is not only for the protection of the receiver, it's for the protection and best interests of the estate as a whole, and all creditors and investors, because it wants to protect the receiver from having to defend litigation, voluminous litigation, that would interfere with those duties. So, this agreed order goes beyond just the parties to it, and it is not a contract. This question of gross negligence, I would suggest to the court that a gross negligence standard would be most inappropriate given this court's willful and deliberate standard. The willful and deliberate standard has been structured for a reason. There's almost a doubling down of the wording. Willful, not alone, and deliberate. And in the Gendusa case, this court acknowledged or observed that there is a semantic quagmire surrounding the word willful. The standard that this circuit and some others have made on the willful and deliberate, something intentional has to have happened. There'd be no reason for those, both of those words. In Gendusa, the court also equated deliberate with intentional. So, deliberate means intentional. Willful, I don't know if it's, if they're redundant. Gendusa suggested that willful and deliberate might be redundant. I call it a doubling down, just to make sure that intent is what's required. And if you go to gross negligence, it's a slippery slope. Gross negligence versus negligence, you'll never get a definition that is a black line definition. It would leave to the trier of fact, discretion, judgment, vagueness. The willful and deliberate standard, among all the other benefits it has, is there is a jury instruction that's understandable, and I would say a black line. And if it were gross negligence, the policies behind the which is to encourage capable people to take these positions would disappear. Who would go into receivership being told, well, don't worry about it, it's gross negligence standard. Well, how's that really different than a negligence standard, other than maybe degree that's very awkward and hard for the trier of fact. And it would also encourage the kind of suits that we've got here, because we hear that this suit is filed thinking that gross negligence is the standard. And now you've got an attack on 21 separate decisions, all of which, I suggest to the court, the record supports, all of which involve thinking, judgment, investigation, discretion, including almost all of them, not all of them, on the basis of an advisor's advice. Now, we heard about an alleged conflict. There is no conflict. The advisor would have gotten paid either way. The only reason the advisor didn't get paid for some of the stock sales was because he wasn't involved in those stock sales. If he had advised conversion and a sale and that all occurred, he would have gotten a commission. Counsel said there's nothing in writing, it's just Weiss's word. Well, actually, it isn't. Docket number 182, statement of facts, paragraphs 176 to 177, have the advisor, in writing, in an email, telling Weiss the downsides to doing the conversion and said it was hard to justify a current market because this is all trading on news hype. And remember what the trading is. This isn't buying Google stock or Apple stock or even some small capitalized company on a regular exchange. These are penny stocks. 0.001 versus 0.002. The market's volatile. Sometimes there aren't buyers. Even after a conversion, this is more like an illiquid asset than a liquid asset because there may not be buyers. Some of these conversions were asked to be done after deregistration of the company. Mr. Novak, I have a question about the subject of count 10. The Inversco Corporation, you have both cited the stocks, the stock certificates, as evidence both supporting and not supporting the transfer of Inversco to Hartman. Can you explain your position to me with respect to the significance of the stock certificates? The plaintiffs argue that because the receiver asked for and got stock certificates, that that's evidence that the Inverso, proposed Inverso transaction, actually closed. But that's not so because new stock certificates were not going to be issued. No new stock was going to be issued by the receiver. The receiver was going to be diluted, not increased in stock. These were certificates for the stock the receiver already owned but didn't have certificates for. It wasn't raised here. An oral argument was a big part of the briefing was the argument that it is enough to satisfy the Wilhelm Deliberate Standard by finding that there was an intentional act that unintentionally caused harm. And that's not what the wording of the rule is. The wording of the rule is a violation of duties. And in that regard, the Supreme Court's Geiger case is very very instructive. That was in a bankruptcy setting, of course, and in that case the issue was dischargeability under 523 A6. And the court had to look at what did it modify. Was it enough to have a willful act or did it have to be a willful injury? Willful malicious injury was the test. And the court said willful modifies injury and rejected the argument that willful injury meant a willful act that unintentionally caused injury. That's the way our rule is worded and that makes sense. And if it were otherwise, the fact that it's unintentional, it wasn't a judgment. So everything that's being challenged here, which are judgments, were done willfully and deliberately, but not willfully and deliberately as a violation of the duty. Looting, the estate embezzlement, that would be a willful and deliberate violation of the duty. That simply didn't happen. Much is made out of the fact that in a few places in her opinion, Judge Lefkow used the phrase intent to harm the estate and the plaintiffs turned that into that, oh, even Judge Lefkow didn't follow the circuit standard. Well, it's true that she said intent to harm a couple of times, but she said at pages 9 to 10 of her summary judgment opinion, she said the standard that she was going to follow. And just like Judge Scudder, you said we shouldn't assume that a court-appointed receiver is not telling the truth. I don't think Judge Lefkow would have said I'm applying the Seventh Circuit's willful and deliberate violation standard and then go off on another standard. She said, quote, a receiver must intend to breach her fiduciary duties for personal liability to attach, end quote, personal liability requires a willful and deliberate violation of a receiver's duties rather than a willful and deliberate act that results in harm, end quote, this remains the governing standard. When she then a couple times said intent to harm, that didn't mean she was changing the standard. She also repeatedly used other language. She said, quote, Weiss quote, did not intentionally breach her fiduciary duties. She said, and that Weiss did not quote, intend to breach her fiduciary duties. And she said that Weiss did not quote, breach her fiduciary duties under the intent standard imposed in this case, the Seventh Circuit willful and deliberate standard. And she said that plaintiffs did not create a triable issue of fact as to Weiss's quote, intent to breach her fiduciary duty. Another time she said the intent standard applicable to the present case. And sometimes she just said Weiss's intent. Surely what the court was doing was shorthanding this court's willful and deliberate violation of fiduciary duty standards without repeating it verbatim each and every time she analyzed one of these 21 different transactions. I don't know that I've ever done this before, but if there aren't any other questions, I'm going to stop about three minutes early. I hope I don't regret doing that later. I see none. Thank you. And our thanks to all counsel. The case is taken under advisement. Your time had expired. We'll move on to our next